UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAM LEWIS BENNETT, | ) | CASE NO. 22-31334 |
| | ) | |
| Debtor | ) | |
| | ) | |
| NEXTGEAR CAPITAL, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | Adv. Pro. No. _____ |
| WILLIAM LEWIS BENNETT, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

SERVE:     14311 Blenheim Palace Court
Houston, Texas 77095

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6)

The plaintiff in this action, NextGear Capital, Inc. ("NextGear Capital"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), and 727(b); and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, requests that the Court determine certain obligations of William Lewis Bennett ("Defendant") to NextGear Capital to be nondischargeable.  In support of its Complaint, NextGear Capital states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1.      On May 17, 2022 (the "Petition Date"), Defendant filed in the Southern District of Texas a Petition for Relief under Chapter 7 of the United States Bankruptcy Code in Case No. 22-31334.

2.      Defendant listed his physical address in a written filing with this Court as 14311 Blenheim Palace Court, Houston, Texas 77095.  Defendant was represented in the filing of the Petition for Relief by Lawrence D. Tackett, whose business mailing address is 85 North Villa Oaks Drive, The Woodlands, Texas 77382.

3.      NextGear Capital is a Delaware corporation doing business in Texas and is a creditor of Defendant in his underlying bankruptcy case.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).  Venue is proper under 28 U.S.C. § 1409(a).

5.      At all times relevant herein, Defendant was the sole member and sole owner of Texas Elite Exotics LLC ("Dealer"), a Texas limited liability company that is or was doing business at 100 Northpark Central Drive, Suite 300, Houston, Texas 77073.

6.      At all times relevant herein, Defendant was actively involved in the day-to-day business operations of Dealer and had primary authority over Dealer's used vehicle sales operations, including obtaining and monitoring the sales of Dealer's inventory.

7.      On or about November 17, 2020, Dealer and NextGear Capital entered into a Demand Promissory Note and Loan and Security Agreement (the "Note").  A true and accurate copy of the Note, including all subsequent amendments thereto, is attached hereto and incorporated herein as Exhibit A.

8.      Defendant was aware of the terms of the Note, as he executed the Note and both amendments thereto in his capacity as the sole owner of Dealer.

9.      Under the terms of the Note, NextGear Capital granted Dealer a Credit Line (as defined in the Note) in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00),

for the purpose of financing inventory for Dealer's used car lot.   The Credit Line was subsequently increased to One Million, Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), and then subsequently increased to Two Million, Five Hundred Thousand and 00/100 Dollars ($2,500,000.00).

10.   Under ¶ 4(f) the Note, Dealer and Defendant were obligated "[t]o hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for such Unit of Lender Financed Inventory, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower)."

11.   Under the terms of the Note, Dealer granted NextGear Capital a security interest in (hereinafter, the "Collateral"):

> All of [Dealer]'s assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in Borrower's Reserve held by or on behalf of [NextGear Capital], if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and inventive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by [Dealer]; all cash reserves; all of [Dealer]'s books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of [Dealer] in electronic or digital form); and all additions, accessions, accessories replacements, substitutions, and proceeds of any of the foregoing.

12.   NextGear Capital's security interest in the Collateral is perfected by virtue of a UCC Financing Statement filed by NextGear Capital with the Texas Secretary of State.

13.   As a condition of extending credit to Dealer, NextGear Capital required Defendant to execute an Individual Personal Guaranty (the "Guaranty") in favor of NextGear

Capital, whereby Defendant guaranteed prompt and full payment to NextGear Capital and satisfaction of all obligations of Dealer pursuant to the Note. A true and accurate copy of the Guaranty is attached hereto and incorporated herein as Exhibit B.

### COUNT I—FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY (11 U.S.C. § 523(a)(4))

14.     NextGear Capital realleges and incorporates by reference the allegations of paragraphs 1 through 13, the same as if set forth verbatim herein.

15.     Between November 17, 2020, and March 7, 2022, NextGear Capital advanced funds (the "Advances") to Dealer and to certain third parties on Dealer's behalf, at Defendant's request, in order to finance certain of Dealer's inventory pursuant to the terms of the Note.

16.     The vehicles financed with the Advances constituted Collateral under the Note.

17.     The Advances were not repaid as agreed, and NextGear Capital declared the Note to be in default on or about May 6, 2022.

18.     NextGear Capital has not recovered thirteen (13) of the twenty-six (26) floor planned vehicles which had an outstanding balance as of the Petition Date, and there are currently no floor planned vehicles remaining in Dealer's inventory or possession. A list of the thirteen (13) missing vehicles (the "SOT Vehicles"), including each vehicle's year, make, model, Vehicle Identification Number, the amount originally advanced to Dealer, and the principal balance remaining on each vehicle, is attached hereto and incorporated herein as Exhibit C.

19.     Upon information and belief, Dealer and Defendant sold all of the SOT Vehicles.

20.     Upon information and belief, Dealer and Defendant have received full payment from the purchasers of the SOT Vehicles, resulting in NextGear Capital being deprived of the Sales Proceeds from a legitimate sale.

21.     As of the Petition Date, the remaining principal balance owed on the SOT Vehicles, exclusive of all interest and fees, is One Million, Four Hundred Ninety-Two Thousand, Five Hundred Sixty-Two and 64/100 Dollars ($1,492,562.64).

22.     Pursuant to Sections 4(f) and 5(o) of the Note (the "Trust Provisions"), all amounts received from the sales of any item of Inventory were required to be held in trust for the sole benefit of NextGear Capital and were to be remitted promptly to NextGear Capital within twenty-four (24) hours of Dealer's receipt of the Sales Proceeds.

23.     Despite selling the SOT Vehicles and receiving the sales proceeds thereof, Dealer and Defendant have not paid NextGear Capital the balances remaining on the SOT Vehicles.

24.     Defendant was the sole individual who had access and control of the proceeds from the sales of the SOT Vehicles (the "Sale Proceeds").

25.     Defendant was aware of the terms of Dealer's secured line of credit with NextGear Capital, as those terms were spelled out in the Note, which Defendant executed.

26.     Defendant, as Dealer's sole owner, and having knowledge of the Note, had a fiduciary duty to hold the Sale Proceeds in trust for the benefit of NextGear Capital and to remit the Sale Proceeds to NextGear Capital within twenty-four (24) hours of receipt.

27.     Defendant was aware of his obligation to hold the Sale Proceeds in trust under both the Note and the Guaranty.

28.     Defendant knew NextGear Capital had a perfected security interest in the Collateral.

29.     Defendant knew NextGear Capital had a perfected security interest in the Sale Proceeds.

30.     Defendant breached his fiduciary duty by intentionally failing to deliver the Sale

Proceeds of the SOT Vehicles to NextGear Capital, instead converting those Sale Proceeds for other purposes.

31.     Defendant is liable to NextGear Capital for fraud or defalcation in a fiduciary capacity, embezzlement, or larceny, and the sum of One Million, Four Hundred Ninety-Two Thousand, Five Hundred Sixty-Two and 64/100 Dollars ($1,492,562.64) is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as NextGear Capital's actual damages relating to Defendant's actions.

**COUNT II—MONEY OBTAINED THROUGH FALSE PRETENSES,
A FALSE REPRESENTATION, OR ACTUAL FRAUD
(11 U.S.C. § 523(a)(2)(A))**

32.     NextGear Capital realleges and incorporates by reference the allegations contained in paragraphs 1 through 31, the same as if repeated verbatim herein.

**The Wraith**

33.     On or about July 22, 2021, Dealer sold a 2016 Rolls Royce Wraith, Vehicle Identification Number SCA665C52GUX86309 (the "Wraith") to Titus Leasing Company ("Titus"), a leasing company located in Camp Hill, Pennsylvania, to then be leased back to Dealer pursuant to an agreement between Titus and Dealer.  A true and accurate copy of the Purchase Contract is attached hereto and incorporated herein as Exhibit D.

34.     On November 6, 2021, Defendant requested floor plan financing for the Wraith on Dealer's behalf from NextGear Capital in the sum of $174,000.00.  As purported evidence of Dealer's ownership interest in the Wraith, Defendant uploaded to NextGear Capital's Dealer Account Portal (the "Dealer Portal") a title reassignment and bill of sale for the Wraith, showing the Wraith was reassigned from Titus Leasing Company back to Dealer.  A copy of the title reassignment and bill of sale uploaded by Defendant to the Dealer Portal at the time of the

financing request is attached hereto and incorporated herein as <u>Exhibit E</u>.

35.     At the time Defendant requested floor plan financing for the Wraith from NextGear Capital, Dealer did not have an ownership interest in the Wraith.

36.     NextGear Capital relied on the falsified documents when making its decision to floor plan the Wraith for Dealer, without knowledge or any reason to suspect that such documents had been falsified.

37.     On November 6, 2021, NextGear Capital, unaware that the title reassignment and bill of sale provided by Defendant had been falsified, and that Dealer was not the true owner of the Wraith, advanced Dealer $174,000.00 in order to floor plan the Wraith.

38.     Had NextGear Capital been aware on November 6, 2021, that the Wraith was not available for sale in Dealer's inventory; that Dealer did not own the Wraith; and that the title reassignment and bill of sale had been falsified, NextGear Capital would have declared the account to be in default and would have made no further advances under the Note.

39.     Instead, and as a direct and proximate result of Defendant's deception, NextGear Capital continued to make additional advances to Dealer under the Note after November 6, 2021, and those additional advances were not fully repaid.

40.     Additionally, neither Dealer nor Defendant have fully repaid all of the principal amount advanced by NextGear Capital for the Wraith.

**The Range Rover**

41.     On or about July 22, 2021, Dealer sold a 2020 Land Rover Range Rover, Vehicle Identification Number SALGS5SE5LA575426 (the "Range Rover") to Titus , a leasing company located in Camp Hill, Pennsylvania, to then be leased back to Dealer pursuant to an agreement between Titus and Dealer.  A true and accurate copy of the Purchase Contract is attached hereto

and incorporated herein as Exhibit F.

42.     On January 20, 2022, Defendant requested floor plan financing on Dealer's behalf for the Range Rover from NextGear Capital in the sum of $100,000.00.  As purported evidence of Dealer's ownership interest in the Range Rover, Defendant uploaded to the Dealer Portal a title reassignment and bill of sale for the Range Rover, showing the Range Rover was reassigned from Titus Leasing Company back to Dealer.  A copy of the title reassignment and bill of sale uploaded by Defendant to the Dealer Portal at the time of the financing request is attached hereto and incorporated herein as Exhibit G.

43.     At the time Defendant requested floor plan financing for the Range Rover from NextGear Capital, Dealer did not have an ownership interest in the Range Rover.

44.     NextGear Capital relied on the falsified documents when making its decision to floor plan the Range Rover for Dealer, without knowledge or any reason to suspect that such documents had been falsified.

45.     On January 20, 2022, NextGear Capital, unaware that the title reassignment and bill of sale provided by Defendant had been falsified, and that Dealer was not the true owner of the Range Rover, advanced Dealer $100,000.00 in order to floor plan the Range Rover.

46.     Had NextGear Capital been aware on January 20, 2022, that the Range Rover was not available for sale in Dealer's inventory; that Dealer did not own the Range Rover; and that the title reassignment and bill of sale had been falsified, NextGear Capital would have declared the account to be in default and would have made no further advances under the Note.

47.     Instead, and as a direct and proximate result of Defendant's deception, NextGear Capital continued to make additional advances to Dealer under the Note after January 20, 2022, and those additional advances were not fully repaid.

48.     Additionally, neither Dealer nor Defendant have fully repaid all of the principal amount advanced by NextGear Capital for the Range Rover.

49.     Defendant's debt to NextGear Capital which relates to the Wraith and the Range Rover (the "Fraudulently-Obtained Advances")—the unpaid balance of Two Hundred Forty-One Thousand, Three Hundred Thirty-One and 50/100 Dollars ($241,331.50)—therefore constitutes a nondischargeable debt of Defendant to NextGear Capital, as NextGear Capital's actual damages relating to Defendant's actions in obtaining floor plan financing for vehicles that Dealer did not own.

## COUNT III—ADDITIONAL EXTENSIONS OF CREDIT OBTAINED THROUGH FALSE PRETENSES, A FALSE REPRESENTATION, OR ACTUAL FRAUD (11 U.S.C. § 523(a)(2)(A))

50.     NextGear Capital realleges and incorporates by reference the allegations contained in paragraphs 1 through 49, the same as if repeated verbatim herein.

51.     In addition to fraudulently obtaining floor plan financing on the Wraith, Defendant engaged in a pattern of conduct intended to defraud NextGear Capital through which he directly obtained, and failed to repay, no less than Two Million, Sixty-Four Thousand, Three Hundred One and 11/100 Dollars ($2,064,301.11) from NextGear Capital through false pretenses, false representations, or actual fraud.

### The Wrangler

52.     On November 16, 2021, NextGear Capital advanced the sum of $22,192.00 to Dealer in order to finance a 2017 Jeep Wrangler, Vehicle Identification Number 1C4BJWDG9HL682032 (the "Wrangler") for Dealer's inventory.

53.     Unbeknownst to NextGear Capital, Dealer sold the Wrangler to a retail customer on December 21, 2021 and obtained a temporary license plate for the Wrangler from the Texas

Department of Motor Vehicles on that date. A true and accurate copy of the Texas DMV Inquiry Report ("TWIX") for the Wrangler, redacted to conceal all personally identifying information of the purchaser, is attached hereto and incorporated herein as <u>Exhibit H</u>.

54.     Upon information and belief, Dealer received full payment for the Wrangler from the purchaser and/or from a third party on the purchaser's behalf at or near the time of the sale.

55.     On January 7, 2022, Defendant knowingly and falsely represented to Krysten Hill ("Hill"), a lot auditor whom Defendant knew to be auditing Dealer's lot on NextGear Capital's behalf, that the Wrangler was "on a test drive," when in fact Defendant—the sole owner of Dealer—knew that the Wrangler had been sold more than two weeks before and was no longer a vehicle available for sale in Dealer's inventory.

56.     On February 3, 2022, Defendant knowingly and falsely represented to Lynnette Vyles ("Vyles"), another lot auditor whom Defendant knew to be auditing Dealer's lot on NextGear Capital's behalf, that the Wrangler was "on a test drive," this time with someone named "Calista Houck," when in fact Defendant—the sole owner of Dealer—knew that the Wrangler had been sold more than a month before and was no longer a vehicle available for sale in Dealer's inventory.

57.     Defendant intentionally and repeatedly concealed from NextGear Capital the fact that the Wrangler had been sold.

58.     Had NextGear Capital been aware on either January 7, 2022 or February 3, 2022 that the Wrangler had been sold but not paid to NextGear Capital; that the Wrangler was no longer a vehicle available for sale in Dealer's inventory; and that Defendant had made false statements to NextGear Capital's lot auditors in order to conceal the sale, NextGear Capital would have made no further advances under the Note.  Additionally, NextGear Capital would

have declared the account to be in default and recovered its inventory immediately, thus mitigating its potential losses.

59.    Instead, and as a direct and proximate result of Defendant's deception, NextGear Capital continued to make additional advances to Dealer under the Note after January 7, 2022, and those additional advances were never fully repaid.

60.    Neither Dealer nor Defendant have fully repaid NextGear Capital the principal amount advanced by NextGear Capital for the Wrangler.

**The Mulsanne**

61.    On November 17, 2021, NextGear Capital advanced the sum of $250,000.00 to Dealer in order to finance a 2019 Bentley Mulsanne, Vehicle Identification Number SCBBT7ZH6KC004110 (the "Mulsanne") for Dealer's inventory.

62.    Unbeknownst to NextGear Capital, Dealer sold the Mulsanne to a retail customer on November 19, 2021 and obtained a temporary license plate for the Mulsanne from the Texas Department of Motor Vehicles on that date. A true and accurate copy of the TWIX for the Mulsanne, redacted to conceal all personally identifying information of purchaser, is attached hereto and incorporated herein as Exhibit I.

63.    Upon information and belief, Dealer received full payment for the Mulsanne from the purchaser and/or from a third party on the purchaser's behalf at or near the time of the sale.

64.    On January 7, 2022, Defendant knowingly and falsely represented to Hill that the Mulsanne was "on a test drive," when in fact Defendant—the sole owner of Dealer—knew that the Mulsanne had been sold more than a month before and was no longer a vehicle available for sale in Dealer's inventory.

65.     On February 3, 2022, Defendant knowingly and falsely represented to Vyles that the Mulsanne was "on a test drive," this time with someone named "Robert McDonald," when in fact Defendant—the sole owner of Dealer—knew that the Mulsanne had been sold more than two months before and was no longer a vehicle available for sale in Dealer's inventory.

66.     Defendant intentionally and repeatedly concealed from NextGear Capital the fact that the Mulsanne had been sold.

67.     Had NextGear Capital been aware on either January 7, 2022 or February 3, 2022 that the Mulsanne had been but not paid to NextGear Capital; that the Mulsanne was no longer a vehicle available for sale in Dealer's inventory; and that Defendant had made false statements to NextGear Capital's lot auditors in order to conceal the sale, NextGear Capital would have made no further advances under the Note.  Additionally, NextGear Capital would have declared the account to be in default and recovered its inventory immediately, thus mitigating its potential losses.

68.     Instead, and as a direct and proximate result of Defendant's deception, NextGear Capital continued to make additional advances to Dealer under the Note after January 7, 2022, and those additional advances were never fully repaid.

69.     Neither Dealer nor Defendant have fully repaid NextGear Capital the principal amount advanced by NextGear Capital for the Mulsanne.

### The Charger

70.     On January 19, 2022, NextGear Capital advanced the sum of $79,700.00 to Dealer in order to finance a 2021 Dodge Charger, Vehicle Identification Number 2C3CDXL93MH626586 (the "Charger") for Dealer's inventory.

71.     Unbeknownst to NextGear Capital, Dealer sold the Charger to a retail customer on January 25, 2022, and obtained a temporary license plate for the Charger from the Texas Department of Motor Vehicles on that date. A true and accurate copy of the TWIX for the Charger, redacted to conceal all personally identifying information of purchaser, is attached hereto and incorporated herein as Exhibit J.

72.     Upon information and belief, Dealer received full payment for the Charger from the purchaser and/or from a third party on the purchaser's behalf at or near the time of the sale.

73.     On February 3, 2022, Defendant knowingly and falsely represented to Vyles that the Charger had not yet been received from the auction where it was purchased, when in fact Defendant knew that the Charger had been sold more than a week before and was no longer a vehicle available for sale in Dealer's inventory.

74.     Defendant intentionally concealed from NextGear Capital the fact that the Charger had been sold.

75.     Had NextGear Capital been aware on February 3, 2022, that the Charger had been sold more than a week before; that the Charger was no longer a vehicle available for sale in Dealer's inventory; and that Defendant had made a false statement to NextGear Capital's lot auditor in order to conceal the sale, NextGear Capital would have made no further advances under the Note.  Additionally, NextGear Capital would have declared the account to be in default and recovered its inventory immediately, thus mitigating its potential losses.

76.     Instead, and as a direct and proximate result of Defendant's deception, NextGear Capital continued to make additional advances to Dealer under the Note after February 3, 2022, and those additional advances were never fully repaid.

77.     Neither Dealer nor Defendant have fully repaid NextGear Capital the principal

amount advanced by NextGear Capital for the Charger.

78.     Defendant repeatedly lied to NextGear Capital's lot auditors in order to keep Dealer's Credit Line with NextGear Capital open, whereby Defendant was able to obtain additional extensions of credit from NextGear Capital through false pretenses, a false representation, or actual fraud.

79.     Specifically, had NextGear Capital been aware on November 6, 2021, that Dealer had submitted forged and false documents for the Wraith when Defendant requested floor plan financing for that vehicle, NextGear Capital would not have advanced money to Dealer for the purpose of financing the Wraith for Dealer's inventory.

80.     Furthermore, had NextGear Capital been aware on November 6, 2021, that Defendant was requesting floor plan financing for a vehicle that Dealer no longer owned, NextGear Capital immediately would have locked Dealer's account and would not have loaned any more money to Dealer.

81.     Instead, between November 6, 2021, and March 7, 2022, unaware that Defendant was defrauding NextGear Capital by requesting floor plan financing for vehicles that Dealer no longer possessed; and submitting forged and false documentation; and making false statements to NextGear Capital's lot auditors in order to maintain his deception, NextGear Capital advanced an additional Two Million, One Hundred Sixty-Four Thousand, Five Hundred Eleven and 63/100 Dollars ($2,164,511.63) (the "Additional Advances") to Dealer in order to finance twenty-six (26) more vehicles for Dealer's inventory.

82.     As of Petition Date, a principal balance of Two Million, Sixty-Four Thousand, Three Hundred One and 11/100 Dollars ($2,064,301.11) remains unpaid on the Additional Advances, exclusive of all interest and fees.

83.     Defendant actively and continuously deceived NextGear Capital in order to induce NextGear Capital to make the Additional Advances to Dealer, and Defendant directly benefited from the Additional Advances.

84.     Defendant's fraud directly resulted in losses to NextGear Capital through the unpaid Additional Advances.

85.     Defendant owes NextGear Capital a debt for money, property, or extensions of credit obtained from NextGear Capital by false pretenses, a false representation, or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

86.     Defendant's debt to NextGear Capital which relates to the unpaid Additional Advances, in the amount of Two Million, Sixty-Four Thousand, Three Hundred One and 11/100 Dollars ($2,064,301.11), therefore constitutes a nondischargeable debt of Defendant to NextGear Capital, as NextGear Capital's actual damages relating to Defendant's actions.

## COUNT IV—WILLFUL AND MALICIOUS INJURY
### (11 U.S.C. § 523(a)(6))

87.     NextGear Capital realleges and incorporates by reference the allegations of paragraphs 1 through 86, the same as if set forth verbatim herein.

88.     Defendant's conduct described above rises to the level of intentional monetary injury to NextGear Capital.

89.     Defendant willfully and intentionally submitted falsified documents to NextGear Capital in order to floor plan two vehicles, and likewise willfully and intentionally misrepresented the status of three other vehicles to NextGear Capital's lot auditors.

90.     At the time Defendant requested and received both the Fraudulently-Obtained Advances and the Additional Advances, Defendant knew that he and Dealer were both in financial distress.

91.     Defendant knew that his misrepresentations were substantially certain to harm NextGear Capital, as neither Dealer nor Defendant had any alternative source to repay NextGear Capital for the money he obtained through his deception.

92.     Defendant is liable to NextGear Capital for willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6).

93.     The sum of Two Million, Sixty-Four Thousand, Three Hundred One and 11/100 Dollars ($2,064,301.11) therefore constitutes a nondischargeable debt of Defendant to NextGear Capital, as NextGear Capital's actual damages relating to Defendant's actions.

WHEREFORE, NextGear Capital respectfully requests that the Court enter judgment (i) declaring a portion of Defendant's debt, including attorney fees, costs, and expenses, to NextGear Capital to be nondischargeable pursuant to one or more subsections of 11 U.S.C. Section 523(a); (ii) awarding NextGear Capital judgment against Defendant in an amount not less than Two Million, Sixty-Four Thousand, Three Hundred One and 11/100 Dollars ($2,064,301.11), plus attorney fees, post-judgment interest, and costs of collection; and (iii) awarding NextGear Capital such other and further relief as the Court may deem just and proper.

**[Remainder of Page Left Intentionally Blank]**

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
817-338-1616 Phone
817-338-1610 Fax

*/s/ Owen C. Babcock*
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Owen C. Babcock
State Bar I.D. #24104585
obabcock@padfieldstout.com

*Attorneys for NextGear Capital, Inc.*